UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**UTAHNA HUGHES, et al.,**

    **Plaintiffs,**

v.                                                   Case No.: 3:12cv332/RS/CJK

**EDMOND BURIE, et al.,**

    **Defendants.**
_____/

**ORDER and AMENDED**
**<u>REPORT AND RECOMMENDATION</u>**

The undersigned has determined that the previous Report and Recommendation (Doc. 177), should be vacated. This cause is before the court upon the motion of defendants John Biederman and GC&P of Pensacola, Inc. to decertify this collective action (doc. 165) and plaintiffs' response in opposition (doc. 170). Plaintiffs, former exotic dancers at a nightclub called "Escapes,"[1] brought suit under the Fair Labor Standards Act ("FLSA") alleging that the defendants failed to pay them a proper minimum wage. The court conditionally certified the collective action and allowed other similarly situated dancers to opt-in to the suit. (Doc. 47). Following the

---

[1] Consistent with previous orders, "Escapes" will be used to identify the property located at 4001 N. Davis Highway, Pensacola, Florida 32503. "Escapes" refers to all previous and future names of the property in question for those periods relevant to the case.

completion of phase II discovery, defendants moved to decertify the class on the basis that the plaintiffs are not similarly situated and because several of the plaintiffs, specifically Ashley Spearman, Samantha Clark, Shameka Cleveringa, and Rachel Heath, have not participated in the case. (Doc. 165). In response, plaintiffs argue that they share the same relevant factual and employment settings, the unique defenses alleged by defendants do not outweigh the benefits of proceeding as a collective action, and that fairness and procedural considerations warrant a collective trial. (Doc. 170).

Under the FLSA, "[a]n action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The Eleventh Circuit has recommended–but not required–that district courts conduct a two-stage procedure to "effectively manage FLSA collective actions in the pretrial phase." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008); *see also Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001) (suggesting "district courts in this circuit adopt [the two-stage procedure] in future cases"). Under this suggested framework, at the first stage the court conditionally certifies the class if the group of plaintiffs demonstrate that they are similarly situated to one another. The district court's assessment of the plaintiffs' similarity at the first stage is "not particularly stringent." *Hipp*, 252 F.3d at 1214; *see also Morgan*, 551 F.3d at 1261 (describing "the standard for determining similarity" at the initial stage as "fairly lenient, flexib[le], not heavy, and less stringent" than Rule 20(a)'s joinder requirements). "The second stage is triggered by an employer's motion for decertification," and the court's review of class certification at this stage is "less

lenient" than at the first stage.  *Morgan*, 551 F.3d at 1261 (citing *Anderson v. Cagle's*, 488 F.3d 945, 953 (11th Cir. 2007)).  The Eleventh Circuit has declined to specify the threshold degree of similarity among the opt-in plaintiffs necessary to maintain certification at the second stage, but has noted that the "'similarly situated' requirement of § 216(b) is more elastic and less stringent than the requirement found in Rule 20 (joinder) and Rule 42 (severance)."  *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996) (holding that "a unified policy, plan, or scheme of discrimination may not be required to satisfy the more liberal 'similarly situated' requirement of § 216(b)").  Class members are not required to "hold identical positions" but must possess similarities extending "'beyond the mere facts of job duties and pay provisions.'" *Anderson*, 488 F.3d at 953 (quoting *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1313 (M.D. Ala. 2002)).  Additionally, the Eleventh Circuit has emphasized that courts should consider several factors at the second stage, including: "'(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant[s] [that] appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations[.]'" *Morgan*, 551 F.3d at 1261 (quoting *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001)).

     Here, defendants argue that several of the opt-in plaintiffs have repeatedly failed to participate in the case. (Doc. 165).  Specifically, plaintiffs Ashley Spearman (doc. 165-1, pp. 8-9), Samantha Clark (doc. 165-1, pp. 1-3), Shameka Cleveringa (doc. 165-1, pp. 4-5), and Rachel Heath (doc. 165-1, pp. 6-7) have failed to attend their scheduled depositions and otherwise have not participated in the case.  Notably, plaintiffs' counsel has withdrawn as counsel for plaintiffs Heath, Spearman, and

Clark because of an inability to contact the aforementioned plaintiffs. (Doc. 151). Plaintiff Cleveringa, although still represented by plaintiffs' counsel, has advanced no reason for her failure to appear at deposition scheduled on October 30, 2013.[2] Although decertification on this ground is not justified at this stage, plaintiffs Ashley Spearman, Samantha Clark, Rachel Heath, and Shameka Cleveringa must show cause why they should not be dismissed from this action or otherwise sanctioned because of their failure to participate and attend their scheduled depositions.

The defendants next argue that the remaining opt-in plaintiffs–Utahna Hughes, Jessica McClellan, Michelle Clarke, and Nicoley Frey[3]–all worked at Escapes during different time periods and under different management. (Doc. 165, p. 3). Plaintiff McClellan worked at Escapes from May 2012 to June 2012 (doc. 170-2), plaintiff Hughes from January 2011 to July 2012 (doc. 170-3), plaintiff Clarke from August 2011 to June 2012 (doc. 170-4), and plaintiff Frey from September 2009 to February 2012 (doc. 165, p. 3).[4] Defendants also note that defendant Pyritz owned Escapes until May 2010 at which time it was sold to defendant Biederman. Defendant Biederman operated Escapes until February 15, 2012, and subsequently sold Escapes to defendant Burie. (Doc. 165, p. 3). Defendants, therefore, contend each plaintiff has "specific individualized claims" and that defendants have "unique defenses to each [p]laintiff." As a result, defendants claim the plaintiffs are not similarly situated.

---

[2] Plaintiff Cleveringa moved to quash her initial deposition (doc. 134) but also failed to appear at her second deposition scheduled for October 30, 2013. (Doc. 162).

[3] Plaintiff Bodiford is serving as the personal representative for Nicole Frey.

[4] There are minor inconsistencies concerning the beginning and end of plaintiffs' employment at Escapes. (*See* Docs. 99-1, 170-2, 170-3, 170-4).

Case No. 3:12cv332/RS/CJK

Plaintiffs respond claiming that the defendants collectively established the policies allegedly resulting in violations of the FLSA. (Doc. 170, p. 7). Plaintiffs Clarke, McClellan, and Hughes have put forward declarations indicating that while employed at Escapes they were all classified as independent contractors, were all required to obtain a license through the City of Pensacola prior to employment at Escapes, all performed similar job duties as dancers, were not paid the appropriate minimum wage and instead compensated only through tips from patrons and the sale of "dancer drinks," were all required to "tip-out" the bartender and "DJ" following the completion of their job duties, and that the defendants required plaintiffs to work their entire shift and did not allow them to leave early. (Docs. 170-2, 170-3, 170-4). Plaintiffs further aver the defendants all had the ability to hire and/or fire the dancers at Escapes and "exercised the same control over, and applied the same common policy(ies) and plan(s)" to all of the dancers at Escapes. (Docs. 170-2, 170-3, 170-4). Indeed, defendant Burie affirmed that he classified all dancers as licensed independent contractors, did not pay the dancers the required minimum wage or tip credit, and that the classification of dancers as independent contractors and the lack of a minimum wage has been in place since July 2009. (Doc. 170-5, pp. 9, 11-12). Importantly, defendants have put forward no information contradicting plaintiffs' declarations.

Based upon the plaintiffs' declarations, defendant Burie's deposition, and the absence of information put forward by the defendants to refute plaintiffs' assertions, plaintiffs have shown themselves to be similarly situated. Plaintiffs have put forward information indicating they were all subject to operational control including being hired and/or fired, being required to obtain a license prior to employment by the

defendants, and subjected to collective policies that existed for several years and under which they were not paid the appropriate wages. Temporally, plaintiffs worked at Escapes during different periods but their employment periods did overlap with one another. Plaintiff McClellan worked at Escapes for two months (May 2012 to June 2012) and plaintiffs Clarke and Hughes were both employed at Escapes during that period (August 2011 to June 2012 and January 2011 to June 2012, respectively). Plaintiff Frey (September 2009 to February 2012)–while not overlapping with plaintiff McClellan–worked with plaintiff Hughes for several months and plaintiff Clarke for over a year. The plaintiffs' different periods of employment, however, is not an absolute bar to a finding that they were all similarly situated. *See Bobbitt v. Broadband Interactive, Inc.*, No. 8:11-cv-2855-T-24MAP, 2013 WL 5720329, at *16 (M.D. Fla. Oct. 21, 2013) (holding that variation in the duration of time worked for an employer "does not prevent a finding that the [plaintiffs] were similarly situated"). Moreover, based on defendant Burie's testimony, the alleged policy and scheme resulting in the FLSA violations has persisted since July 2009, extending through each of the defendants' ownership of Escapes and impacting each plaintiff in a similar manner. *See Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 899 (N.D. Iowa 2008) (holding that the "'tie that binds'" the plaintiffs together is the "same general compensation system," and therefore those plaintiffs subject to that compensation system are "similarly situated" despite some "very big factual differences"). As to the plaintiffs' individualized claims, "[j]ust because the inquiry is fact-intensive does not preclude a collective action where plaintiffs share common job traits." *Morgan*, 551 F.3d at 1263. The court is also capable of determining, upon presentation of proof, which plaintiffs do not have claims against certain defendants based upon their

employment period and addressing any affirmative defenses raised by the defendants specific to an individual defendant. (*See* Doc. 78). Notably, defendants do not specify in their motion for decertification just what the individualized claims and unique defenses would be as to various plaintiffs.

Finally, fairness and procedural concerns also weigh against decertification. The FLSA "'should be given a broad reading, in favor of coverage.'" *Pendlebury v. Starbucks Coffee Co.*, 518 F. Supp. 2d 1345, 1363 (S.D. Fla. 2007) (citing *Fegley v. Higgins*, 19 F.3d 1126, 1132 (6th Cir. 1994) and *Kelley v. Alamo*, 964 F.2d 747, 749-50 (8th Cir. 1992)). Decertifying the class would result in plaintiffs with similar claims over similar periods of time individually filing suit against identical defendants. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (noting that collective actions under 29 U.S.C. § 216(b) benefit the judicial system by "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity").

Accordingly, it is ORDERED:

1. The undersigned's previous Report and Recommendation (doc. 177) is VACATED.

2. Plaintiffs Ashley Spearman, Erica Quarles, Rachel Heath, and Shameka Cleveringa shall have **fourteen (14) days** from the date of this Order and Report and Recommendation to show cause why they should not be dismissed from this case, or sanctioned, for failure to attend their scheduled depositions, or otherwise participate in this case.

And, it is respectfully RECOMMENDED:

1. That defendants' motion for decertification (doc. 165) be DENIED.

At Pensacola, Florida, this 6th day of March, 2014.

                                */s/ Charles J. Kahn, Jr.*
                                **CHARLES J. KAHN, JR.**
                                **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>. A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).