IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**UTAHNA HUGHES;**
**JESSICA MCCLELLAN,**

    **Plaintiffs,**

v.   CASE NO.  3:12-cv-332-RS-CJK

**EDMOND BURIE;**
**CG&P OF PENSACOLA, INC.,**
**JOHN BIEDERMAN; and**
**GAY PYRITZ,**

    **Defendants.**

_____/

## ORDER

Before me are Plaintiff's Motion for Summary Judgment (Doc. 205), Defendant Pyritz' Response in Opposition (Doc. 208), and Defendants John Biederman and GC&P of Pensacola, Inc.'s Response in Opposition (Doc. 207). The relief requested in Plaintiff's Motion for Summary Judgment (Doc. 205) is **DENIED**.

## STANDARD OF REVIEW

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

An issue of fact is material "if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Wright v. Sandestin Investments, LLC,* 914 F. Supp. 2d 1273, 1278 (N.D. Fla. 2012). Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

## **BACKGROUND**

I will accept the facts in the light most favorable to the Defendants. *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008) (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1343 n.1 (11th Cir. 2002)). "'All reasonable doubts about the facts should be resolved in favor of the non-movant.'" *Id.* (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999); *Clemons v. Dougherty County*, 684 F.2d 1365, 1368-69 (11th Cir. 1982).

Plaintiffs, former exotic dancers at a nightclub called "Escapes," brought suit under the Fair Labor Standards Act ("FLSA") alleging that the Defendants failed to pay them a proper minimum wage. Defendant Pyritz owned the club from approximately November of 1992 until she sold her entire interest in the club to co-defendant John Biederman on April 30, 2010. Defendant Biederman then owned the club from approximately April 30, 2010, until February 17, 2012. On February 17, 2012, Defendant Biederman sold the club to Defendant Burie and non-party Timothy McEvoy.[1]

According to Defendant Pyritz, Plaintiff Frey, through her estate, is the only Plaintiff who alleges that she worked during the time Defendant Pyritz owned the club. Doc. 208. However, Defendant Pyritz maintains that Plaintiff Frey never

---

[1] On December 26, 2013, Default Judgment was entered against Edmond Burie for failure to comply with the court's order.

worked at the club during her ownership. Doc. 208-3. None of the remaining Plaintiffs worked at the club prior to April 30, 2010. Doc. 208.

During the time the Plaintiffs danced at Escapes, and since July 2009, the entertainers were classified as independent contractors as opposed to employees. Doc. 207. According to Defendant Biederman, the nightclub permitted adult entertainers to dance on a nightly basis in exchange for the payment of a rental fee of $5.00 per night. *Id.* However, the "house fee" was rarely collected in order to accommodate the entertainers and compete with similar establishments for the best dancers. *Id.* Contrary to Plaintiffs' testimony, Defendant Biederman testified that the entertainers were not required to "tip out" anyone at the nightclub, were not required to pay a fee for the use of the VIP room, and were free to not only dance at more than one club, but were also allowed to arrive at any time the club was open to perform and could leave the club at any time without any penalty or repercussions. *Id.* The only time an entertainer would be told not to return is if she was caught engaging in an illegal activity on the premise. *Id.*

Other than the City of Pensacola licensing requirement, Defendants did not require the entertainers have any dance background or formal dance training. *Id.* Thus, the entertainers' skill levels varied. *Id.* However, despite no formal training, entertainers earned money through commissions on "dancer drinks," through tips

paid for stage dances, and through tips paid directly in connection with private dances. *Id.* According to Defendants, the skill an entertainer must possess is the ability to "sell" a fantasy and establish a rapport with the customers, not dance. *Id.*

Plaintiffs, on the other hand, testify that the entertainers were required to "tip-out" certain staff including, but not limited to, the bartender and disc jockey (DJ), were required to pay a five dollar house fee in order to work a shift, and were required to pay a VIP room fee. Doc. 205. Additionally, according to Plaintiffs, Defendants could hire and fire the Plaintiffs at will. *Id.* For instance, Defendants required Plaintiffs to report to their shift by a certain time and work the entire shift, and if an entertainer missed a shift she could be fired. *Id.* Further, Defendants provided the facilities, music, and equipment for the Plaintiff entertainers to perform their job duties. *Id.*

## ANALYSIS

Under the Fair Labor Standards Act ("FLSA"), "employee" is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The FLSA defines "employ" as "to suffer or permit to work." 29 U.S.C. § 203(g). An "employer," under the FLSA, is "any person acting directly or indirectly in the interest of an employer in relation to an employee…" 29 U.S.C. § 203(d). Plaintiffs

argue that they are employees for purposes of the FLSA, and that Defendants improperly classified them as independent contractors. Doc. 205.

In order to determine if an individual is an employee for purposes of the FLSA, courts have used the "economic realities" test. The "economic realities" test includes the following factors:

> **(1)** the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
> **(2)** the alleged employee's opportunity for profit or loss depending upon his managerial skill;
> **(3)** the alleged employee's investment in equipment or materials required for his task, or her employment of workers;
> **(4)** whether the service rendered requires a special skill;
> **(5)** the degree of permanency and duration of the working relationship;
> **(6)** the extent to which the service rendered is an integral part of the alleged employer's business.

*See Yilmaz v. Mann,* 13-80351-CV, 2014 WL 1018006 (S.D. Fla. Mar. 17, 2014) (*citing Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1313 (11th Cir. 2013)) ("The inquiry is whether the alleged employee has 'economic dependence' on his or her alleged employer.").

At the summary judgment stage a court must apply the economic realities test to the material facts of the case. However, in this case, almost every material fact is disputed. Summary judgment at this time is inappropriate.

## **CONCLUSION**

Accordingly, the relief requested in Plaintiff's Motion for Summary Judgment (Doc. 205) is **DENIED**.

**ORDERED** on October 9, 2014.

<u>/S/ Richard Smoak</u>
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**